1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF NEVADA
2     _____
                                          )
3      In re:                             )
                                          )
4      FAR EAST NATIONAL BANK VS      CH: 11  )    3-10-99998
       AMERICAN REALTY INVESTOR           )
5                                         )
       ADV: 3-10-05095                     )
6                                         )
       FAR EAST NATIONAL BANK VS AMERICAN  )
7      REALTY INVESTORS, INC.             )
                                          )
8      MOTION BY AMERICAN REALTY INVESTORS )
       INC. TO CHANGE VENUE                )
9     _____)
                                          )
10     In re:                             )
                                          )
11     FAR EAST NATIONAL BANK VS      CH: 11  )    3-10-99998
       AMERICAN REALTY INVESTOR           )
12                                        )
       ADV: 3-10-05095                     )
13                                        )
       FAR EAST NATIONAL BANK VS AMERICAN  )
14     REALTY INVESTORS, INC.             )
                                          )
15     MOTION BY FAR EAST NATIONAL BANK FOR )
       ABSTENTION OR REMAND                )
16    _____)

17                                   U.S. Bankruptcy Court
                                     300 Booth Street
18                                   Reno, NV 89509-1300

19                                   November 29, 2010
                                     2:14 p.m.
20

21                  BEFORE THE HONORABLE GREGG W. ZIVE, Judge

       APPEARANCES:
22

23     For Far East National Bank:     Jasmine K. Mehta
                                        Paul A. Matteoni
                                        LEWIS & ROCA
24                                      50 W. Liberty St., Ste. 410
                                        Reno, NV 89501
25

1    <u>APPEARANCES:</u>   (Continued)

2    For American Realty              John P. Sande, IV
     Investors:                      JONES VARGAS
3                                    100 W. Liberty St., 12th Flr.
                                     Reno, NV 89501
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by electronic sound recording; transcript
     produced by AVTranz.

1              THE COURT:  In the matter of Far East National Bank

2      versus American Realty Investor.

3              May I have appearances, please.

4              MS. MEHTA:  Your Honor, Jasmine Mehta and Paul

5      Matteoni on behalf of Far East National Bank.

6              MR. SANDE:  Your Honor, John Sande, IV, on behalf of

7      American Realty Investors.

8              THE COURT:  All right.  Please be seated.

9              Have the parties been able to arrive at any

10     resolution of any of these two motions?

11             MS. MEHTA:  No, Your Honor.

12             THE COURT:  No?

13             MR. SANDE:  No, Your Honor.

14             THE COURT:  All right.  Give me a moment, please.

15             On July 19th, 2010, Art Piccadilly Airport, LLC, Art

16     Piccadilly Chateau, LLC, and Art Piccadilly Shaw, LLC filed

17     petitions under Chapter 11 of the Code in the Eastern District

18     of Texas.  That following that filing there was filed in the

19     Second Judicial District Court, state of Nevada, a complaint in

20     which Far East National Bank was the plaintiff, and asserted

21     that the Defendants had guaranteed obligations of the Debtors

22     in the Texas bankruptcy case and had brought suit for breach of

23     contract based upon those guarantees.  And had sought a

24     pre-judgment writ of attachment, together with a pre-judgment

25     writ of garnishment, with an order to show cause why the

1   application should not be granted.

2          As I noted, the complaint was filed on the 9th of

3   September.  A show cause hearing was set for the 13th of

4   September.  Actually, that's the date of the order.  The show

5   cause hearing was to occur, as I remember, on the 20th of

6   September.  Three days prior to the 20th, on September 17th,

7   the Defendant, American Realty Investors, Inc., filed a notice

8   of removal of action in all claims.  That notice was filed

9   here, in the United States Bankruptcy Court for the District of

10  Nevada, on the 17th of September, docket number 1 in this

11  adversary case.  I have reviewed the notice.  The removal was

12  done pursuant to § 14 -- well, actually it was Title 28, 1452,

13  which is applicable in these matters.

14          It is alleged that the case is related to the

15  bankruptcies of the Debtors, which I understand are being

16  jointly administered by the United States Bankruptcy Court in

17  the Eastern District of Texas.  It is alleged that it is

18  related to, because it affects case administration terms of

19  claims, Debtors' liabilities and creditor base.  I have no idea

20  what that means, "creditor base."

21          Now, I have reviewed the notice, and there has been

22  no contention that the notice of removal itself was

23  inappropriate or that it was deficient.  It appears to me to

24  have followed Federal Rule of Bankruptcy Procedure 9027.

25          Then it is argued that it is a core proceeding under

1    157(b)(2)(A) and (O).  I notice that bankruptcy counsel's not

2    here.  I didn't -- I don't know how the removed case fits into

3    § 157(b)(2)(A), (B) or (O), I just -- it can't.  I just don't

4    see how it could possibly be core.  This is a suit against a

5    guarantor at best related to jurisdiction.  It doesn't arise in

6    or under the Bankruptcy Code.  I just -- if there is subject

7    matter jurisdiction, which I will discuss in a moment, it is

8    based upon the slimmest of foundations.  And then to find that

9    it's core, I'll be glad to hear argument, but I do not see how

10   it possibly could be core.

11           And then American Realty, ARI, states that if it is

12   not core, the Defendant consents to final order of judgment by

13   the bankruptcy judge.  If I determine to retain this action,

14   then we'll have to make a determination whether there's consent

15   to this Court entering final orders.  If there is not, then of

16   course I would function somewhat as a magistrate judge, enter

17   my report and recommendations if it were tried here -- be tried

18   here, so you might end up with two trials.  I don't see the

19   point to that.

20           Anyway, the process itself for removal appears to me

21   to have been appropriate, and there's been no contention

22   otherwise, correct?

23           MS. MEHTA:  That is correct, Your Honor.

24           THE COURT:  All right.

25           There then followed a series of actions similar, and

1    my review of the pleadings would indicate legal arguments are

2    similar, substantially similar to those raised before the

3    United States Bankruptcy Court in the Eastern District of

4    California.  And that's because there was a similar situation

5    in front of that court.  On August 18th, 2010, certain related

6    non-debtor entities removed a California state court litigation

7    to the Eastern District of California Bankruptcy Court.  Then

8    did the same thing as ARI has done here, moved to transfer

9    venue to Texas.  And that request was met with a request to

10   remand by the Plaintiff, Far East National Bank.

11            I would point out that there are substantial

12   differences between the facts that Judge Lee had in the Eastern

13   District of California and what are before me and that we're

14   just touching on for a moment.  The pleadings say in March

15   2007, but according to the exhibit I looked at I think it

16   probably was January 2007, the Plaintiff, Far East National

17   Bank, made three loans, one to Art Piccadilly -- all to the

18   Debtors, Art Piccadilly Airport, LLC, the loan was

19   $12.2 million, and I believe the balance due is somewhere

20   around 11.6 million at this time.  Art Piccadilly Chateau, I

21   think the original amount lent was 3.7 million, and the amount

22   due is now probably close to, with the accumulation of

23   additional fees and interest, 3.6 million.  And then a loan to

24   Art Piccadilly Shaw, LLC, and I think that amount was

25   12,800,000.  So if you add those all up, it was around 27 to

7

1    28 million dollars in loans, the outstanding balance of which

2    has been reduced somewhat.

3         Oh, in fact, I think Shaw's obligation is now

4    12,171,246, so that's 23, 26 -- it's almost $28 million that is

5    owed.  And those were for the acquisition of hotels located in

6    Fresno, California.  The governing documents have a choice of

7    law provision, that being California.  They also have a venue

8    provision: California.  So what do we have.  We've got -- and I

9    believe that the borrowers are California corporations, is that

10   correct?  Piccadilly Airport, Chateau, and Shaw.  I thought

11   they were.  But any rate, at the very least you've got hotels

12   and rental property in California.  You've got California law

13   and California venue.  And you've got the Plaintiff, who's

14   located in California.

15        Now, those loans were guaranteed by various entities.

16   My review of the documents indicate even -- the Debtors entered

17   into cross-default provisions and guarantees.  In addition, the

18   Defendant in this adversary, American Realty Investors, was

19   also a guarantor with three other guarantors, so far as I can

20   determine.  But they're not before me.

21        At the time that the guarantee was executed, the

22   Defendant held 100 percent of the equity in the Debtors.  Now,

23   it has been represented without dispute that ARI no longer has

24   any equity interest in any of the Debtors.  Is that accurate?

25        MR. SANDE:  I believe that is correct.

8

1          MS. MEHTA:  As far as I know, Your Honor, that's
2     correct.
3          THE COURT:  All right.
4          Apparently, ARI is a New York Stock Exchange listed
5     company.  It holds for investment a diverse portfolio of
6     apartments, office buildings, retail centers, land, located
7     throughout the United States.  It is a Nevada corporation.  But
8     it also seems to be conceded and undisputed that it has neither
9     offices, employees, real or personal property, or any
10    operations in the state of Nevada.  Is that accurate?
11         MR. SANDE:  That is accurate.
12         MS. MEHTA:  Your Honor, that -- whether it has real
13    or personal property here is in dispute.  It has notes
14    receivable, and one of the reasons why we brought suit in
15    Nevada is because we didn't know whether the notes receivable
16    were receivable here or whether they were in Texas.
17         THE COURT:  All right.  So it may have the potential
18    to be the payee on a note.
19         MS. MEHTA:  Yes, Your Honor.
20         THE COURT:  All right.  But all of its accounts and
21    principal place of business and headquarters are located in or
22    around the Dallas Metroplex, is that correct?
23         MR. SANDE:  That's correct, Your Honor.
24         THE COURT:  Correct?
25         MS. MEHTA:  As far as I know, Your Honor.

1          THE COURT:  Is there any account in the state of

2     Nevada that you've found from ARI?

3          MS. MEHTA:  Not that we've found.

4          THE COURT:  I assume you've looked?

5          MS. MEHTA:  Yes, Your Honor.

6          THE COURT:  Okay.

7          So the action was filed in California on July 12,

8     2010, against not only the Debtors but other non-debtor

9     guarantors for a judicial foreclosure, specific performance,

10    and breach of the guarantees.  One week later was the filing of

11    the petitions in Texas, and about a month later, August 18, as

12    I noted earlier, the state -- California state court action was

13    removed, motion to transfer to Texas filed, motion to remand.

14    At the time the pleadings were filed, there was not any

15    decision made by the United States bankruptcy judge in

16    California.

17          I know that there have been subsequent pleadings

18    filed even today, but last week we went -- utilizing Pacer, and

19    we found an order entered on November 18th, 2010, and that was

20    the result of a hearing conducted November 10th, 2010, by

21    United States bankruptcy judge Richard Lee.  He granted the

22    remand motion.  He denied the venue transfer motion.  He did

23    not prepare any extensive findings or conclusions.  He noted

24    that the motion to transfer was denied for the reasons stated

25    on the record and that the motion for remand was simply

1   granted.  I've looked at his civil minutes that were also of

2   record.  So that's what he did.

3           In the matter before me, after the removal on the

4   17th, on October 1 American Realty Investors filed its motion

5   to transfer venue to the Eastern District of Texas.  That's

6   docket number 6 in the -- I keep saying adversary, but this is

7   a strange proceeding and it's consistent with the statute and

8   with the rules that the case is removed to the district in

9   which it was filed.  That's how it's before me, notwithstanding

10  that there is no bankruptcy case.  It would be filed, we would

11  call, under a miscellaneous type pleading.  But it does have a

12  case number and it's 10 -- as I understand it -- I need to --

13  what number did we eventually put on it?

14          THE DEPUTY:  It's just -- and it's a fictitious case

15  number, Your Honor, 10-99998, just to allow it to import into--

16          THE COURT:  So it's never been opened as a case.  And

17  I notice it's got a case number here, and I don't know why the

18  pleadings have a case number.

19      (Court and Deputy Confer)

20          THE COURT:  All right.  Where it says Bankruptcy

21  District Nevada case, that's the adversary, 10-05095.  That's

22  not the case.  And the case was never officially opened.  It

23  has a fictitious number and we'll provide that again.  What is

24  it?

25          THE CLERK:  It is 10-99998.

1          THE COURT:  Did you -- do you have that?

2          MS. MEHTA:  Yes, Your Honor.

3          THE COURT:  All right.  That's what we have to do

4     internally.  Okay.

5          I've read the motion, docket number 6, and the

6     exhibits attached thereto.  I've read the declaration of John

7     Daugherty, who's the tax manager for American Realty Investors,

8     styled as docket number 7 on the 1st of October.  I read the

9     opposition filed on behalf of Far East National Bank on the 4th

10     of November, docket number 16.  I read the declaration of

11     Mickey Janelle -- is that how he pronounces it?

12          MS. MEHTA:  That's correct.

13          THE COURT:  And he is the vice president of the

14     Plaintiff, Far East National Bank, as docket 17.

15          There was a reply filed on behalf of American Realty

16     Investors on the 12th of November, docket number 21.

17          All matters have been properly noticed and served.

18          I think those are all the pleadings that relate to

19     the change of venues -- or request for transfer, is that

20     correct?

21          MR. SANDE:  Yes, sir.

22          MS. MEHTA:  Yes, Your Honor.

23          THE COURT:  All right, then I've read -- I have read

24     many of the cases that were cited.  Most of them, frankly, I

25     was familiar with.  But I have in front of me In re: Burley,

1  matter of <u>Dak Manufacturing</u>, <u>Pacor</u> -- <u>In re: Donald Jones</u>,

2  <u>Brentano's</u>, <u>Halper vs. Halper</u>.

3         I would point out that, so far as I can determine,

4  nobody bothered to cite the Ninth Circuit seminal case on

5  bankruptcy court jurisdiction, which would have been helpful.

6  And that's <u>In re: Fietz</u>, F-I-E-T-Z.  At least I didn't find it

7  in the pleadings.  I may have overlooked it.  You can find that

8  at 852 F.2d, 455, Ninth Circuit, 1988.

9         And we're pretty familiar with this case here in this

10 court.  And the best thing about it is that if you cite it --

11 and I've heard it both ways, either <u>Pacer</u> or <u>Pacor</u>, P-A-C-O-R,

12 the Third Circuit decision, then you've got it right.  Because

13 the Ninth Circuit made it very clear, as follows, at page 457

14 of its opinion.  Quote:

15         "We conclude that the <u>Pacor</u> definition best

16         represents Congress's intent to reduce

17         substantially the time-consuming and

18         expensive litigation regarding the

19         bankruptcy court's jurisdiction over a

20         particular proceeding.  The <u>Pacor</u> definition

21         promotes another congressionally endorsed

22         objective, the efficient and expeditious

23         resolution of all matters connected to the

24         bankruptcy estate.  We therefore adopt the

25         <u>Pacor</u> definition quoted above."

1          It's got a footnote.  That footnote says, "We note

2     the bankruptcy judges in the Ninth Circuit have applied the

3     Pacor definition of relatedness," and cites Gennari versus

4     United States Department of Treasury, which is In re: Educators

5     Investment Corp., 59 BR 910, at page 913, a 1986 decision of

6     the bankruptcy court of the state of Nevada.  So I really don't

7     need a lot of out-of-circuit, out-of-district citations when

8     that's been a settled matter here for what, 24 years.

9          The Ninth Circuit then continued:

10          "We reject any limitation on this definition.

11          To the extent that other circuits may limit

12          jurisdiction where the Pacor decision would

13          not, we stand by Pacor."

14          In other words, the broadest definition of

15     jurisdiction possible.  And what's the test?  And they quote

16     from Pacor:

17          "The usual articulation of the test for

18          determining whether a civil proceeding is

19          related to bankruptcy is whether the outcome

20          of the proceeding could conceivably have any

21          effect on the estate being administered in

22          bankruptcy.  Thus, the proceeding need not

23          necessarily be against a debtor or against a

24          debtor's property.  An action is related to

25          bankruptcy if the outcome could alter the

1                 debtor's rights, viabilities, options, or

2                 freedom of action, either positively or

3                 negatively, and which in any way impacts

4                 upon the handling and administration of the

5                 bankruptcy estate."

6     End of quote.

7                 That's broad.  It -- the Ninth Circuit noted that the

8     Second, Sixth, and Seventh Circuits had adopted definitions

9     similar to Pacor, but their formulations would deny

10    jurisdiction in cases where the dispute is conceivably related

11    to the bankruptcy estate, but that that relationship would be

12    remote.  And as you know from what I just read, the Ninth

13    Circuit did not so limit jurisdiction in this circuit.  Very

14    broad jurisdictional case.

15                The other motion and pleadings that I've read was the

16    Bank's motion to remand or abstention, filed on the 14th of

17    October, docket number 10.  I've read the motion.  I read the

18    declaration of Ms. Mehta filed in support, docket number 11,

19    and the exhibits attached thereto.  I read the opposition filed

20    on behalf of American Realty Investors on the 12th of November,

21    docket number 20.  I read the reply filed by Far East National

22    Bank, docket number 27, on November 22nd.  The declaration of

23    Jasmine Mehta, docket number 28.  And then there was filed

24    docket number 30, today.

25                Now, I've read the guarantee.  Exhibit 1 appears to

1    me to be exactly what I read into the record from the decision

2    by Judge Lee already.

3          Now, the supplemental declaration was just the order

4    that I read.  So I'm not -- I think I've -- I think it's

5    redundant.  I've read it.  And all these matters have been

6    properly noticed and served.

7          I've read all the pleadings that have been filed

8    regarding the motion for remand, order to abstain?

9          MS. MEHTA:  Yes, Your Honor.

10         MR. SANDE:  Yes, Your Honor.

11         THE COURT:  All right.  Let's get a few things

12   straight.

13         And by the way, I've read the cases.  And I think

14   that it would have been helpful if everybody had.  National

15   Acceptance of California, Security Farms -- that's a big case.

16   Johnny T. Patton, that was Judge Goldwater's case.  And it

17   should be noted that that was decided in 1981, prior to Pacor,

18   prior to Fietz, and without a real in-depth analysis of the

19   guarantor issue because it really didn't matter to Judge

20   Goldwater.  He found that it's easy to find who it's related

21   to, then remanded it anyway.  So, not a lot of help.

22         I've read Fitzgerald's Gaming Corporation.  That's an

23   interesting case.  Fitzgerald's case was filed before me.  This

24   was Fitzgerald's Sugar Creek, which this judge, Judge Federman

25   was dealing with.  And as a result of what he did, there was

1    then a very large judgment that was entered against Station

2    Casinos, who later became a debtor in this court, and that led

3    to a lawsuit and a suit against the board of directors of

4    Fitzgerald because they had assigned all that interest in that

5    litigation to Mr. Griffith.  And all of a sudden he had a very

6    large judgment, so they had some kind of buyer remorse and I

7    tried that case for two days before we settled it.  So I'm

8    familiar with the holding in that case.  And I've read

9    Hendricks, Culkin and Southmark.  Southmark also related to a

10   case that was in this court.  The Helms case.  So I've read

11   that.

12          Let's look at the -- what I consider to be the

13   statutory rules, 14 -- 28 U.S.C. 1452(a) clearly provides that

14   a party may remove any claim or cause of action in a civil

15   action to the district court for the district where the civil

16   action is pending if such district court has jurisdiction of

17   such claim or cause of action under § 1334 of this title.

18   Section 1334 is the jurisdictional statute for the bankruptcy

19   court.  It used to be, if you read some of the old opinions,

20   § 1471, that was pre-Marathon, and then post-Marathon they

21   redid all the jurisdictional statutes, and that's how the

22   numbers changed.  So it's here.

23          Then, what analysis am I required to do?  § 28 U.S.C.

24   1412 and Federal Rule of Bankruptcy Procedure 7087 provide that

25   a court may transfer a case or proceeding under Title 11 --

1   that's the United States Bankruptcy Code -- to a district court

2   for another district in the interests of justice or for the

3   convenience of the parties.  I have published an opinion called

4   <u>B.L. of Miami</u> -- I didn't see it cited -- in which I analyzed

5   those tests prior to the change in the rule that now clearly

6   allows courts to raise venue sua sponte.

7           At the time I entered my opinion, there was a split

8   of authority.  I found, by analogy to the district court, that

9   bankruptcy courts and judges did have the ability and

10  discretion to raise the issue sua sponte.  I did in that case,

11  and I sent it to Florida.  Even though the debtor and the

12  creditor and the landlord wanted it here, and there was proper

13  venue in this district.

14          The burden is upon the party seeking to transfer

15  venue, by a preponderance of the evidence.  And usually that

16  requires, you know, lists of witnesses, who would be

17  inconvenienced by retaining the case or transferring the case,

18  and an analysis of whether or not witnesses can be compelled to

19  attend hearings in the present venue or in the venue to which

20  transfer is being sought.

21          Interest of justice prong.  There are a number of

22  non-exclusive factors.  I think that the Ninth Circuit in <u>Jones</u>

23  <u>versus GNC Franchising</u> set those out pretty well, as well as

24  <u>TIG Insurance</u>.

25          Location of the pending bankruptcy.  And that's

18

1    Texas.  The Debtors asked as to creditor whether the transfer

2    would promote economic and efficient administration of the

3    estate, whether the interests of judicial economy would be

4    served by the transfer, whether the parties would be able to

5    receive a fair trial in each of the possible venues, whether or

6    not either forum has an interest in having the controversy

7    decided within this border, though (sic) location where the

8    relevant agreements are negotiated and executed.  I -- nobody

9    really detailed that element for me.  The state most familiar

10   with the governing law, whether the plan's original choice of

11   forum should be disturbed, and the parties' respective contacts

12   with the forum.

13          Convenience to the parties.  You look at the ease of

14   access to the necessary proof.  Where is it?  Where are the

15   documents located?  Where are the witnesses located?  The

16   convenience of the witnesses and the parties and their relative

17   financial and physical condition.  In other words, are

18   witnesses too old, are they too inform, are they disabled, can

19   they make the trip, would the burden be too much on the

20   plaintiff or defendant to litigate in a forum that's away from

21   their principal place of business, would they have to hire

22   local counsel -- all those issues.

23          And then, of course, the availability of subpoena

24   power for unwilling witnesses and expenses related to bringing

25   witnesses to trial.  Now, frankly, in this case I don't

1  consider that to be of great moment.  There's a guarantee.  Is

2  there a breach?  I -- this is not monumental litigation.

3        The courts are split regarding the jurisdiction of

4  bankruptcy courts over guarantors.  There is a case in the

5  Ninth Circuit that seems to have held that they do, and that's

6  In re: Burley.  I'd point out I don't think that the facts of

7  that case are close to what I have in front of me.  The real

8  issue is whether or not the guarantee claims are so related to

9  the pending bankruptcy cases that they should be litigated with

10 the bankruptcy cases.  Or if they're remote enough.

11       Because a guarantee is a separate contract.  This is

12 an action between non-debtors.  But -- and nobody's been able

13 to point to me, unless I missed it, and I have the continuing

14 guarantee, it was added as an exhibit, any indemnification

15 obligations.  That doesn't mean that there might not be a

16 claim, but there doesn't appear to me to be any contractual

17 indemnity.  Whether there's any common law indemnity, there may

18 or may not be.  And nobody's really briefed that.

19       So those are some of the issues that I look at there.

20       Then there's the remand and abstention issues, and

21 this has caused the parties, in my opinion, considerable

22 consternation.  And I think missed the point.

23       I'm looking at the moving paper, at page 5, where it

24 states, "The Court should remand the complaint pursuant to

25 mandatory abstention, under 1334."  That conflates two separate

1    concepts.  If I remand, I don't abstain.  Because it's not in

2    front of me.  I can abstain without remand, because then it's

3    -- I don't have to.  The problem is, people confuse these.  And

4    that's really true because the elements for permissive

5    abstention under 1334(c)(1) are almost identical.  In fact, the

6    considerations, so far as I can determine in the last 16 years,

7    are identical with remand.

8            But there's an important point.  That when I read

9    this I -- somebody finally, I think in the reply, hit upon it

10   correctly.  The Security Farms case cited by the Ninth Circuit

11   found that once a case was removed, there was no pending state

12   court case, no pending state court proceeding.  What did that

13   mean?  That meant that abstention could not be utilized.  Has

14   nothing to do with jurisdiction.  There seems to be a

15   confusion.  This -- and it has nothing to do with remand.  It

16   just means that 1334(c)(1) and (2) are not available because

17   there's now underlying -- that's what Security Farms says.  And

18   it made it very, very clear that it wasn't just talking about

19   mandatory abstention as opposed to permissive.  Let me just

20   take a look at that.

21           I'm at page 1010 of the opinion.  Quote, "To require

22   a pendant state action as a condition of abstention eliminates

23   any confusion with 28 U.S.C. § 1452(b)," end of quote.  What

24   does that mean?  Eliminate confusion with 1452, which is what?

25   Removal.  I'll continue:  "...which provides district courts

1    with the authority to remand civil actions properly remove to
2    federal court in situations where there is no parallel
3    proceeding."  So I can remand if there is no parallel state
4    court proceeding.
5              "Section 1334(c), abstention should be
6              read in para materia with § 1452 remand so
7              that the former -- that's the abstention
8              statute -- applies only in those cases in
9              which there is a related proceeding that
10             either permits abstention in the interests
11             of comity -- § 1334(c)(1) -- or that by
12             legislative mandate requires that
13             § 1334(c)(2)" --
14   so, for whether it's a (c)(1) analysis or a (c)(2) analysis,
15   there has to be a related proceeding.  Here, they found there
16   wasn't, because it had been removed.  So abstention's not
17   available under Ninth Circuit law.
18             Then there is another statute, § 1441 of Title 28.
19   And it provides as follows.  In 1441 -- I believe it's (b).
20   Yes.
21             "Any civil action of which the district
22             courts have original jurisdiction dependent
23             on a claim or right arising under the
24             Constitution, treaties or laws of the
25             United States shall be removable without

1                regard to the citizenship or residence of

2                the parties."

3         So that first sentence deals with federal question of

4    jurisdiction.  It does not deal with diversity.  The next

5    sentence addresses diversity.  Quote:

6                "Any other such action shall be removable

7                only if none of the parties in interest

8                properly joined and served as defendants is

9                a citizen of the state in which the action

10               is brought."

11        Now, remember, diversity requires complete diversity

12   if you have federal jurisdiction.  This doesn't limit

13   jurisdiction.  There is diversity in this case.  And the

14   argument that says there is no diversity, I think is wrong.

15   There is diversity.  But it still can't be removed.  And it

16   can't be removed, because the Defendant, ARI, is what?  It is a

17   resident of the state of Nevada, because it's incorporated

18   here.  It is a citizen -- quote, citizen -- of the state.

19   Therefore, it does not satisfy the requirements as set forth in

20   1441(b) that says it can be removed "only" if none of the

21   parties properly joined and served as defendants is a citizen

22   of the state in which the action is brought.  And here the

23   "only" defendant is a citizen.  Has nothing to do with

24   jurisdiction.  Just says "can't be removed."

25               So I believe that the Court probably does have

1   subject matter jurisdiction based upon the Fietz test, which

2   incorporates the Pacor test.  But I don't think that that

3   solves the problem.  It was improperly removed.  And what's the

4   solution for something that's improperly removed?  Remand.

5        And then if one looks, remand is probably the correct

6   result, at least my tentative conclusion, even if it was

7   properly removed.  Why is that?  Well, I'm being asked to

8   choose between two forum that have little or no connection to

9   this case.  Texas, the relationship there is that's where the

10  bankruptcy court is.  That's the principal place of business

11  for ARI.  That's why ARI probably wants to be there.  It makes

12  sense to me.  ARI's connection to the state of Nevada is pretty

13  simple.  It has a resident agent in its corporation.  Maybe

14  there is a note payable here, but I think note payable are

15  transportable.  I don't think it matters whether it's in Nevada

16  or not.

17       I understood why Judge Lee remanded, because he had

18  property in California, he had California law that was going to

19  be applied.  No matter who applies the law, whether it's me, a

20  state court judge, or the judge in the bankruptcy cases, it's

21  going to have to apply what?  California law.  So that is

22  neutral.  I'm not quite sure where you get to trial the

23  quickest.  But I don't see -- I really don't see any basis for

24  transfer, and I don't know how I can transfer if it couldn't be

25  removed in the first instance.  Which, so far as I can

1    determine, leaves me with one option, which is to remand.

2            So that's my analysis.  You've heard my tentative

3    conclusion.  Remand also totally obviates the jurisdictional

4    argument, and I think that the <u>National Acceptance</u> case says

5    exactly I said about 1441.  You don't satisfy it?  Can't remove

6    it.

7            Now, I know there's an issue that I should perhaps be

8    apply -- or apply Fifth Circuit law.  Well, first of all, I

9    don't think it really matters in terms of the analysis that

10   I've just indicated.  Secondly, there was no authority cited

11   for that proposition.  And since we're located in the Ninth

12   Circuit I think my review of the removal, remand, and

13   abstention statutes and law requires me to apply Ninth Circuit

14   law.  I'm not aware of any choice of law principle that would

15   require me to apply Fifth Circuit law just because that's where

16   you're seeking to transfer.  Once you transfer it, maybe you'd

17   apply Fifth Circuit law because you'll be in the Fifth Circuit.

18   Till that time I believe I am governed by the Ninth Circuit

19   analysis.  I am familiar with all the <u>Tucson Estates</u> tests.

20           Obviously -- and Mr. Sande, my tentative conclusion

21   is contrary to the relief you're seeking.  I wanted to put my

22   analysis on, and if you want to focus your argument, I'll be

23   glad to hear it.  You have to go to the podium, please.

24           MR. SANDE:  Your Honor, first off, very thoughtful

25   analysis.

1        I think that basically what it comes down to is your

2   National Security.   An Arizona court held that removal was not

3   proper.  The only thing that I could say that would lead me to

4   believe that that that case might not be applicable in this

5   sense is that they were dealing with abstention in that case.

6   It wasn't a removal issue, it was determining jurisdiction for

7   whether abstention was proper.

8        THE COURT:  But since I apply the same test for a

9   remand as I would for a permissive abstention, I think -- an

10  abstention is really, everybody briefed that on the basis of

11  remand.  And it also ties in a little bit with the transfer of

12  venue analysis.

13       MR. SANDE:  Well, would Security Farms over -- have

14  overruled that analysis in dealing with abstention?  Because I

15  think, based on what your jurisdictional arguments were is that

16  you can make an argument that this is related to jurisdiction.

17       THE COURT:  Oh, I think you can.

18       MR. SANDE:  In which case removal would have been

19  proper.  This Court would --

20       THE COURT:  No.  Removal isn't proper under 1441(b).

21  Why?  Because your client is a citizen of this state.  And

22  there's no independent federal basis for jurisdiction.  And

23  that's what's required for abstention.  Whenever you read the

24  elements of the statute they all require -- it's one of the

25  bases that you can get it if there is jurisdiction other than

1    the pending bankruptcy case itself.

2         And here -- and you were arguing there was, because

3    there was diversity.  I think you're right.  I think there is

4    diversity.  But I don't think that that answers -- or, that

5    satisfies the 1441(b) requirement.  That's --

6         MR. SANDE:  Would your analysis change --

7         THE COURT:  So I don't disagree with your diversity

8    analysis.

9         MR. SANDE:  I'm sorry for interrupting.  Would your

10   analysis change if this was a more closely related to

11   jurisdiction?

12        THE COURT:  No.  Not for the removal.

13        The first, the first -- the threshold question is,

14   was the removal proper.  1441(b) says -- I think -- "no."  If

15   the answer is that is no, then I have no power, because it's

16   not properly before me, except send it back.  If you could get

17   it in front of me somehow, then I would probably take a lot

18   closer look at the abstention arguments.

19        Because -- or the venue transfer arguments.  Because

20   there is far more reason to have it, frankly, in the Eastern

21   District of Texas than it is in the state of Nevada.  I think I

22   would have agreed with Judge Lee; I would have remanded in

23   California because there's far more reason to have it in

24   California than Texas.  Nevada's far more -- is farther removed

25   than either of those two venues.  But I don't think I have the

1    power to do that, because I don't think it's in front of me

2    correctly.  That's what I'm saying.

3            Does that help?

4            MR. SANDE:  No, I understand what your analysis is.

5    I do, completely.

6            THE COURT:  Okay.

7            MR. SANDE:  Well, that's a tough case.  I mean, the

8    National Security.  I mean, it seems to say that -- exactly

9    what Far East has purported it to say.

10           THE COURT:  Yeah.  Well, even if I didn't have the

11   benefit of that case, and I'm trying to remember which judge

12   that was.  I have it in front of me.  Now, see, that was

13   decided in 1987.  No, it actually was decided by the District

14   Court, not by bankruptcy court, because they had to withdraw

15   the reference issue in that case, too.

16           And I looked at it and, you know, he cited Pacor and,

17   of course, this was decided before the Ninth Circuit decided

18   Fietz, but he was right about that.  And he made the

19   distinctions between the guarantor and the non-guarantor.  And

20   he actually looked at the guarantee document.  I have it in

21   front of me.  And he talked about, it's only a precursor to the

22   defendant's potential liability, et cetera.  And he looked at

23   it.  I think he got it, and the key is -- I'm at page 460:

24           "While NACC could have brought this action

25            in the district court, citing adversity, it

1              chose not to.  Having filed the action in a

2              state court, and defendants having removed

3              the action to this court, the removal

4              statutes can't be ignored."

5         Then he cites to 1441(b) and arrives at the same

6    conclusion that I arrive at.  So we both may be wrong, but

7    we're going to be consistent.

8              MR. SANDE:  Okay.

9              THE COURT:  Okay?

10             MR. SANDE:  Yeah, and there's no way I can convince

11   you this is a core proceeding, huh?

12             THE COURT:  No.  Even if I were to get that far, I

13   don't think -- I don't think this is a core proceeding.

14             MR. SANDE:  Well, that would make a difference in

15   your analysis, though, correct?  Is the way I understand the

16   rules.

17             THE COURT:  No, because it's not here.  You can't

18   remove it here.

19             MR. SANDE:  Could you have if it was a core

20   proceeding?  Because that doesn't require the analysis under

21   the related to.

22             THE COURT:  Well, then you're not going to get to the

23   related to, that's correct.  But the point is, how do you get

24   it here?  How do you get this case in front of me by removal,

25   and how -- and then you have to satisfy 1452 and 1441.  And you

1   can't satisfy 1441(b).  That's the problem that you have.

2           No fault -- I mean, they chose to incorporate here.

3           MR. SANDE:  Right.  And I'm just trying to --

4           THE COURT:  They get to be sued here.

5           MR. SANDE:  Yeah.  And I'm just -- I wish I had my

6   code book in front of me.  But it was 1331 or 1332.  No,

7   it's --

8           THE COURT:  1332 is the --

9           MR. SANDE:  1341.  The removal statute.  Or --

10          THE COURT:  1452 is removal.

11          MR. SANDE:  14 --

12          THE COURT:  1441 -- 1442 is the bankruptcy court

13  removal statute.  1441 deals with removal generally, and it

14  requires that -- well, it does not allow removal if one or more

15  of the defendants is a citizen of the state in which the

16  district is located to which removal is sought, and your client

17  is a citizen of the state of Nevada.  Chose it.  Wanted the

18  benefit of our corporate laws, and now it gets part of the

19  obligations of it.

20          MR. SANDE:  Thank you.

21          MS. MEHTA:  Your Honor.

22          THE COURT:  Have I missed something?

23          MS. MEHTA:  No.  I agree with your analysis.  I

24  believe National Acceptance is controlling as to whether

25  removal --

1          THE COURT:  Well, it's not controlling.

2          MS. MEHTA:  Or is persuasive as to whether removal is

3  proper.

4          THE COURT:  Okay.

5          MS. MEHTA:  The only other thing that I would point

6  out --

7          THE COURT:  I think you did conflate removal and

8  abstention.  Remand and abstention.

9          MS. MEHTA:  I agree.  I agree with you.  I tried to

10  -- in my reply I tried to correct that, but --

11          THE COURT:  Yeah, you did.

12          MS. MEHTA:  -- I agree in the original motion I did

13  conflate those two analyses.

14          The only other issue that I would point out, going

15  beyond --

16          THE COURT:  Frankly, at this -- if 1441(b) were

17  satisfied, it'd be a very close question as to what I would do.

18  Very close.  Because there's no contact with Nevada by anybody.

19  Why should there be an action filed here?  I might -- if it had

20  been properly removed, I might look really hard at transfer.

21  Nevada has no interest, no negotiations, no contacts.  No

22  contacts.  So it would be very difficult.

23          MS. MEHTA:  Going to the related to jurisdiction, I

24  did want to point out that --

25          THE COURT:  Sure.

1          MS. MEHTA:  -- in the continuing guarantee in

2    paragraph 6, the guarantor, American Realty Investors, has

3    waived any right of indemnification, contribution, or

4    subrogation.

5          THE COURT:  I know.  And that's why I said if there

6    was any contractual, that --

7          MS. MEHTA:  Right.

8          THE COURT:  -- notwithstanding such language, I have

9    seen actions sought to seek contribution, indemnity

10   notwithstanding that on the basis of unequal bargaining power

11   -- I mean, I'll -- fraud and inducement.  There was --

12   depending upon the extent of the obligation.  They're generally

13   not successful, but they at least raise the issue, and then

14   when we have the broad jurisdictional grant, very difficult.

15         MS. MEHTA:  Agreed.  Although the interesting --

16   interestingly, in the Pacor case, which grant -- it creates the

17   broad jurisdictional standard --

18         THE COURT:  They found none.

19         MS. MEHTA:  They denied, or they --

20         THE COURT:  They found no subject matter

21   jurisdiction.

22         MS. MEHTA:  Exactly.

23         THE COURT:  I know.  Same with Fietz.

24         MS. MEHTA:  Correct.

25         THE COURT:  Fietz also said that there was no subject

1   matter jurisdiction because there you had a husband and wife.

2   There was -- this goes back 30 years when there was a lot of

3   litigation over due on sale clauses, based -- and they got

4   divorced, the husband and wife did, during the pendency of the

5   bankruptcy, that community property is property of the estate.

6   And so what happened is that the District Court and the Court

7   of Appeals said bankruptcy court had jurisdiction over the

8   husband, who was the debtor, but not over the wife,

9   notwithstanding it might have been community property.

10          And the reason for that was it was a Chapter 13 and

11  the plan had been completed, the debtor got his discharge, so

12  it could not have any conceivable effect upon the debtor's

13  rights, et cetera, et cetera, and on the administration of the

14  estate because it was all over.  If it had happened earlier --

15  timing was everything in <u>Fietz</u>.  So that's when you read it,

16  you know, okay.

17          MS. MEHTA:  Correct.

18          THE COURT:  I'm familiar with the case.  Okay.  I'm

19  going to now make my oral findings and conclusions, final oral

20  findings and conclusions, pursuant to Federal Rule of

21  Bankruptcy Procedure 7052.  You may -- there's limited appeal

22  of these orders.  You may incorporate my oral findings and

23  conclusions in lieu of specifying them, if that's acceptable.

24          MR. SANDE:  Yes, Your Honor.

25          THE COURT:  All right.  Then prepare a separate order

33

1    -- well, no, just do the one order incorporating the oral

2    findings and conclusions, mention 7052 that incorporates by

3    reference Federal Rule of Civil Procedure 52, and submit it to

4    Mr. Sande for his approval pursuant to Local Rule 9021.

5           Thank you all very much.  It was an interesting

6    question.  Thank you.

7       (Proceedings Concluded)

8

9

10      I certify that the foregoing is a correct transcript from

11   the record of proceedings in the above-entitled matter.

12

13   Dated: <u>December 13, 2010</u>

14                                    AVTranz, Inc.
                                     845 North 3rd Avenue
15                                    Phoenix, AZ  85003

16

17

18

19

20

21

22

23

24

25